IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDEE OGILVIE,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>SUMMA GLOBAL EDUCATION<br>d/b/a ANB EDUCATION,<br>　　　　Defendant. | CIVIL ACTION<br><br><br><br>NO.  23-4884 |

## MEMORANDUM

**HODGE, J.**                                                                                                             **January 10, 2025**

Sandee Ogilvie ("Plaintiff") brings claims against Summa Global Education d/b/a ANB Education ("Defendant") under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA"), and the Public Policy of the Commonwealth of Pennsylvania. Specifically, Plaintiff alleges that she was discriminated against because of her race, age, and for engaging in a protected activity.

Before the Court is Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) ("Motion") as to the Title VII retaliation claim (Count V), ADEA retaliation claim, PHRA retaliation claim (Count VI), and Plaintiff's Wrongful Termination in violation of Pennsylvania's Public Policy claim (Count VII). (*See generally* ECF No. 11.)[1] For the reasons set forth below, the Court grants Defendant's Motion.

I.　　　**FACTUAL BACKGROUND**[2]

---

[1] The Court notes that Plaintiff's Amended Complaint (ECF No. 8) does not include an ADEA retaliation claim. While an ADEA retaliation claim was included in the Complaint as Count VI (ECF No. 1), it was removed in the Amended Complaint (ECF No. 8.) While the Defendant moves to dismiss an ADEA retaliation claim (ECF No. 11) and the Plaintiff responds to that argument (ECF No. 12), the Court does not consider this claim as it is not included in the Amended Complaint.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

Plaintiff is a Caucasian female who was born in 1952 and was seventy (70) years of age at the time of her termination. (ECF No. 8 at 4, 6.) Defendant is an education company which places international students with host families. (ECF No. 8 at 2.) Plaintiff was hired to be a Program Manager at Defendant in September of 2021. (ECF No. 8 at 4.) In December of 2021, three months after her hiring, Plaintiff was promoted to Program Director. (*Id.*) Throughout Plaintiff's employment, Plaintiff alleges that Defendant "nitpicked" her work. (ECF No. 8 at 5). Plaintiff does not allege what specific "nitpicking" ensued or the specific conduct that she defines as "nitpicking." Defendant company is owned by Ms. Monica Byun. (ECF No. 8 at 4.) On August 15, 2022, Ms. Byun emailed Plaintiff a job offer for her position that was allegedly intended for an external prospective hire who was 30 years younger than Plaintiff and believed by Plaintiff to be Asian-American—specifically, Korean. (*Id.*) Plaintiff alleges that she and one other employee were the only Caucasian employees, with the other employees of the Defendant being Korean.[3] (*Id.*) Plaintiff complained to Ms. Byun about the offer for her position being sent to a prospective hire and Defendant told Plaintiff that it was a mistake.[4] (*Id.*) Plaintiff believes this offer was sent to her to embarrass and humiliate her and force her to resign. (*Id.*) Plaintiff, in response to receiving the offer, complained to Ms. Byun by stating the following:

> Ok, I think you would be very smart to keep me in my present position and bring in MingShin to be an overall whatever you want her/him to be for you and the F-1 and whatever other business you have going on. I know this program, and even better, I have personal relationships with all the European partners who will not want to work with a non American in an exchange program that promotes American cultures. Plus, Rachel would stay and we can concentrate on the J-1 program. You are clearly happy having all Korean staff, but I have worked with European agencies and they have always wanted to do business with American based sponsors. I think the partners would go to other sponsors, I really do. Rachel and I could both go to another agency, but we have good relationship with the European

---

[3] Plaintiff does not allege the exact number of employees that are employed by Defendant.
[4] There are no facts alleged in the Complaint as to what exactly was a mistake, whether it was the sending of the offer to Plaintiff or whether the offer itself was a mistake.

partners who rely on us. Just a thought because the partners are 80% of the J-1 program. You can think about it and let me know. [sic all]

(ECF No. 11-1 at 8.) Plaintiff claims this email, and particularly her mentioning of Defendant being "happy having all Korean staff," was protected activity and she was retaliated against for sending this email. (*See generally* ECF No. 8.)

Defendant, in their factual background, cites directly to the amended complaint and does not allege any disputes based on the facts at this point in time. (*See generally*, ECF No. 11.)

II. **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan* v. *Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* But, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse* v. *Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Plaintiffs cannot prove facts they have not alleged. *Associated Gen. Contractors of Cal.* V. *Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Thus, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678. Rather, a complaint must

3

recite factual allegations enough to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.*

III. **DISCUSSION**

    A. <u>Title VII (Count V) and PHRA (Count VI) Retaliation Claims</u>

The standard for retaliation is consistent between the two statutes, Title VII and PHRA. As a result, the Court conducts one analysis applicable to both statutes.[5] To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that they were (1) engaged in activity protected by Title VII; (2) the employer took an adverse employment action against them; and (3) there was a causal connection between their participation in the protected activity and the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). There are two forms of protected activity protected by Title VII: participation and opposition. *Id.* at 341. Participation is defined as participation in certain Title VII proceedings. Opposition is defined as opposition of discrimination made unlawful under Title VII. When making a showing of either of those two protected activities, the employee must have an "objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Id.*

In evaluating the second prong of establishing a *prima facie* case, an adverse employment action is one which "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his status as an employee." *Id.* In evaluating whether a plaintiff has met the third prong, the ultimate question of causation or retaliation is whether there was "intent to retaliate." *Id.* at 342. If the employee establishes a *prima facie* case of retaliation, under the *McDonnell Douglas* framework, the burden

---

[5] *See Daniels v. School Dist. of Phila.*, 776 F.3d 181, 192–93 (3d Cir. 2015)

shifts to the employer to advance a legitimate, non-discriminatory reason, for the conduct. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the employer meets this standard, the burden then shifts back to the Plaintiff to show that the proffered explanation is false or otherwise pretextual. *Id.*

The Court begins with the first prong of the retaliation analysis, determining whether Plaintiff was engaged in a protected activity. Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management. *Id.* at 343. To determine if a plaintiff sufficiently opposed discrimination, the Court looks to the message being conveyed rather than the means of conveyance. Plaintiff alleges that her opposition to discrimination included complaining about an offer made to a prospective employee who was alleged to be Korean and younger than Plaintiff for Plaintiff's position and for higher pay. (ECF No. 12-1 at 6.) Plaintiff also alleges that she opposed Defendant's preference for having "all Korean Staff." Plaintiff alleges she was retaliated against based on her opposition, which she deems is protected, to Ms. Byun's employment offer to a prospective employee along with Defendant's preference for having an "all Korean staff." (*Id.*)

The Court first addresses Plaintiff's complaint regarding Defendant's alleged preference for "all Korean staff." The Court finds that Plaintiff's statement to Ms. Byun about the alleged preference for "all Korean staff" is not sufficient to establish opposition to alleged discriminatory practices. Plaintiff's message to Defendant was made within the context of Defendant contemplating hiring an employee, believed to be Korean, to a position within Defendant's business. Plaintiff, in her email to Ms. Byun, objects to not only receiving the email, but also the potential hiring of a presumed Korean individual, stating that "I have personal relationships with all the European partners who will not want to work a non[-]American in an exchange program

5

that promotes American cultures." (*See* ECF No. 11-1 at 8.) Furthermore, Plaintiff writes "You are clearly happy having [an] all Korean staff, but I have worked with European agencies, and they have always wanted to do business with American based sponsors." Looking beyond Plaintiff's questionable tone in stating the preference of "European partners" wanting to work with Americans versus those of non-American descent, the Plaintiff's statement is conclusory and does not meet the standard for protected activity as required by law.

Protected activity is defined as "informal protests of discriminatory employment practices, including making complaints to management." *Moore v. City of Phila.*, 461 F.3d 331, 343 (3d Cir. 2006). In determining whether there was sufficient opposition to an unlawful employment practice, the Court looks to the "message being conveyed rather than the means of conveyance." *Id.*

Plaintiff is not objecting to Defendant's hiring practices, either specifically or generally. Rather, Plaintiff is stating that, according to her observation, the Defendant is "clearly happy with having all Korean staff," without mentioning or providing any evidence as to any discriminatory practice or policy. Moreover, the statement is devoid of any data or information to support her comment as anything more than a conclusion without a basis that is rooted in facts. The statement does not make an accusation that Defendant's alleged preference is legally or even morally wrong. And while this Court is not contemplating morality in this analysis, the law on this point is what governs the legal analysis and controls the Court's determination. The Plaintiff's statement alleges that the perceived preference of the Defendant for "all Korean staff" is not the preference of "European partners," who will not want to work with "non-Americans." This statement is not in opposition to unlawful discriminatory practices. Moreover, the message conveyed is more oriented towards a disagreement or perception by Plaintiff on what is more advantageous to the business and relationships with "European partners."

6

Because Plaintiff does not satisfy the first prong of establishing a retaliation claim, and the three-prong analysis is conjunctive, there is no need to evaluate the two remaining prongs. The Plaintiff's Title VII and PHRA retaliation claims fail, and the claims asserted under these statutes are dismissed without prejudice.

B. Wrongful Termination in Violation of Pennsylvania's Public Policy (Count VII)

While Pennsylvania has adopted the traditional view of at-will employment, the Supreme Court of Pennsylvania has carved out a very narrow cause of action for wrongful termination only in the "rare case where termination violates a clear mandate of Pennsylvania public policy." *Kent v. Keystone Hum. Serv.*, 68 F. Supp. 3d 565, 568 (M.D. Pa. 2014) (citing *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307 (Pa. 2000)). Plaintiff concedes she is an at-will employee. Pennsylvania has recognized three limited exceptions where public policy will trump at-will employment. Under Pennsylvania's public policy an employer cannot: (1) require an employee to commit a crime, (2) prevent an employee from complying with a statutorily imposed duty, and (3) discharge an employee when the employer is specifically prevented from doing so by statute. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111–12 (3d. Cir. 2003) (citing *Hennessy v. Santiago*, 708 A.2d 1269 (Pa. Super. Ct. 1998) (abrogated on other grounds)). Note that terminated employees may only invoke the public policy exception in the absence of any applicable statutory remedy. *Id.* (citing *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 898 (3d Cir. 1983)). An employee who alleges they were terminated for complying with a statutorily imposed duty must have a "clear and direct duty." *Brennan v. Cephalon, Inc.*, 298 F. App'x 147, 151 (3d Cir. 2008).

In the present case, Plaintiff alleges that they were fired because Plaintiff complied with an investigation conducted by United States Department of State ("State Department"). Plaintiff

7

alleges that Defendant required Plaintiff to commit a crime by opposing Plaintiff's participation in the investigation and that the Defendant prevented Plaintiff from complying with a statutorily imposed duty. As the record stands, Plaintiff has not alleged sufficient facts to establish those claims as a matter of law.

Plaintiff alleges that Defendant wanted Plaintiff to commit a violation of 18 U.S.C. § 1001(a)(1) which makes it unlawful "in any manner within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States" to "knowingly and willfully falsif[y], conceal[], or cover[] up by any trick, scheme or device a material fact." *Id.* This Court emphasizes that the purpose of the public policy exception to Pennsylvania's at-will presumption is in reference to the public policy of the *Commonwealth of Pennsylvania* and not the public policy of the federal government. *McLaughlin*, 561 Pa. 307, at 317. While there are certainly federal statutes which impact and align with the public policy of the Commonwealth, the cited federal statute, on its face, does not. 18 U.S.C. § 1001 only applies to branches of the federal government.

Plaintiff also alleges that Pennsylvania's Public Policy is implicated, specifically 18 Pa. C.S. Chapter 49(B), Victim and Witness Intimidation.[6] This particular section of the Pennsylvania Statutory Code deals with Victim and Witness Intimidation in civil matters. Plaintiff, in particular, cites § 4953.

> A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter.

18 Pa. C.S. § 4953. Plaintiff does not provide sufficient information that they were a witness, victim, or party, as required by 18 Pa. C.S. § 4953. *See also* 18 Pa. C.S. § 4951. We have no

---

[6] Plaintiff provides an incorrect citation to the statute that they allege is implicated but the wording and phrasing mirrors the statute this Court cites. (*See* ECF No. 8 at 11.)

information on whether the investigation Plaintiff participated in was mandatory, compulsory, or otherwise required by Plaintiff. Plaintiff has alleged no specific facts as to how they were contacted, what the investigation was specifically about, and what process the State Department employed to elicit Plaintiff's participation. Without further information in support of or specificity as to the allegations, there are no grounds to reasonably or objectively conclude that Plaintiff held an affirmative duty to participate in the investigation nor is there any allegation that Plaintiff was prevented by the Defendant from doing so.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Count V (Title VII Retaliation), Count VI (PHRA Retaliation), and Count VII (Wrongful Termination) is granted. Those claims are dismissed without prejudice. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**
　　　　　　　　　　　　　　　　
**HODGE, KELLEY B., J.**